**NOT FOR PUBLICATION OR CITATION**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 05-CV-105-KKC

TONY MARTIN                                                                                                        PLAINTIFF

VS:                    **MEMORANDUM OPINION AND ORDER**

JACK SIZEMORE, JAILER                                                                                  DEFENDANT

The plaintiff, via 42 U.S.C. §1983, challenges the conditions of confinement at the Laurel County Detention Center. He alleges Eighth and/or Fourteenth Amendment violations.

RELIEF

The plaintiff seeks damages and injunctive relief.

EXHAUSTION OF ADMINISTRATIVE REMEDIES

On the complaint form, the plaintiff has placed an "X" in the box beside the word "Yes" to indicate that there is a grievance procedure in the institution where the facts happened. He, however, very candidly admits that he did not present the facts relating to his complaint in an administrative remedy procedure. The explanation offered is that "[t]here is no grievance committee here, your grievances are simply turned over to the person you file on and you get threatened."

If what the plaintiff claims is, in fact, the situation, the plaintiff may not be under any legal compulsion to have to exhaust his administrative remedies before this Court can address his claims.

Recently, another division of this Court has had the opportunity to examine the exhaustion of administrative remedies in the context of the Laurel County Detention Center. *See Glenn S. Baker*

1

*v. Joey Andes, et al.,* London Civil Action 04-cv-343. According to information filed in the *Baker* case, the LCDC reportedly has an Inmate Orientation Manuel and, pursuant to LCDC policy, a copy would have been given to the plaintiff upon his arrival at the LCDC. *Baker v. Andes, et al.*, London Civil Action 04-cv-343, Affidavit of Jailer Jack Sizemore; *Baker v. Andes, et al.*, London Civil Action No. 04-cv-343, {Attachment #4 at p. 7 to} Record No. 24.

Under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a), *et seq.*, the plaintiff was required to exhaust "all available" administrative remedies prior to filing suit. *Booth v. Churner*, 532 U.S. 731, 741 (2001); *Porter v. Nussle*, 534 U.S. 516, 532 (2003); *Boyd v. Corrections Corporation of America*, 380 F.3d 989, 994 (6th Cir. 2004); *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000). Ordinarily, an action must be dismissed pursuant to 42 U.S.C. §1997e(c)(1) and/or 42 U.S.C. §1997e(a) when the plaintiff has failed to establish that he has exhausted administrative remedies, mandatory in nature, that were in place and/or for the plaintiff having failed to plead with specificity the administrative proceedings and their outcomes.

In *Perkins v. Obey*, 2005 WL 433580 (S.D.N.Y.), the court discussed the Second Circuit's recent decision in *Hemphill v. State of New York*, 380 F.3d 680, 686 (2d Cir. 2004), regarding a three-part test to determine whether the PLRA's exhaustion requirement had been satisfied. The court wrote:

> In *Hemphill*, the Circuit held that "where a prisoner plaintiff plausibly seeks to counter defendants' contention that the prisoner has failed to exhaust available administrative remedies, "a three-part test must be applied. 380 F.3d at 686. First, "[d]epending on the inmate's explanation for the alleged failure to exhaust," the court must determine whether administrative remedies were "available" to the prisoner. *Id.* (citing *Abney*, 380 F.3d at 663). Second, the court must ask whether the defendants "forfeited the affirmative defense of exhaustion by failing to raise it," or are estopped from raising the

> defense by their own actions inhibiting the plaintiff's access to available administrative remedies. *Id.* (citing *Johnson v. Testman*, 380 F.3d 691 (2d Cir. 2004); *Ziemba*, 366 F.3d at 163). And, third, where administrative remedies were available and the defendants neither waived the non-exhaustion defense nor are estopped from asserting it, "the court should consider whether 'special circumstances' have been plausibly alleged that 'justify the prisoner's failure to comply with administrative procedural requirements.'" *Id.* (citing *Giano v. Goord*, 380 F.3d 670 (2d Cir. 2004); *Rodriguez v. Westchester County Jail Correctional Department*, 372 F.3d 485, 487 (2d Cir. 2004)).

*Perkins v. Obey,* 2005 WL 433580, *4 (S.D.N.Y.). Thus, the issues of "availability," "estoppel," and "special circumstances" will be addressed.

## I. "Availabililty"?

The first question to consider when addressing whether a prisoner has sufficiently exhausted his PLRA-inspired administrative remedies is whether such PLRA-compliant administrative remedies were "available" to the prisoner. *Id.*

It has previously been claimed that the alleged grievance procedure set forth in the "<u>Complaints</u>" section of the Laurel County Detention Center's "Inmate Orientation Manuel" is mandatory and, thus, is a PLRA-compliant available administrative remedy.

The Laurel County Detention Center "Inmate Orientation Manuel"[1] merely states:

> <u>COMPLAINTS</u>: Any inmate who wishes to file a grievance may obtain forms from any deputy. Fill it out; seal it and send to the front office. Legitimate complaints will be answered.

*Baker v. Andes, et al.,* London Civil Action No. 04-cv-343, Attachment #4 at p. 7 to Record No. 24.

This LCDC "<u>Complaints</u>" policy is not a PLRA-compliant administrative remedy because: (1) it

---

[1] Currently the Court is merely speculating that the Inmate Orientation Manuel in effect at the time of Plaintiff Martin's arrival at the LCDC was the same Inmate Orientation Manuel in effect at the time of Plaintiff Baker's arrival at the LCDC.

is not mandatory in that it merely suggests that an inmate "may" file a grievance, which implies that filing a paper complaint is optional, that an inmate grievance by alternative means is permissible, and that there is no necessity for filing any grievances; (2) it is not exclusive in that nowhere does it indicate that it provides the sole method an inmate may utilize in registering a grievance; (3) it makes no reference to the PLRA; (4) it does not state that a grievance is mandatory for any purposes; (5) it is misleadingly entitled "Complaints" as opposed to "Grievance" or "Administrative Remedy." Because the LCDC "Complaints"policy is not a PLRA-compliant mandatory exhaustion requirement, PLRA administrative remedies were not "available" to the plaintiff.

Additionally, the LCDC "Complaints" policy was not "available" to the plaintiff as such is required pursuant to 42 U.S.C. §1997e(a). The LCDC Inmate Orientation manual stated that only "Legitimate complaints will be answered." Because the LCDC "grievance" system is only unpredictably and discretionarily available to inmates, it is neither a mandatory nor an available system of administrative remedies. The goal of the PLRA is to encourage internal administrative resolutions to inmates' complaints so as to avoid unnecessary litigation in the courts. *See Porter v. Nussle*, 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). Use of the word "may" for inmates and the non-mandatory discretionary nature of the policy for LCDC personnel establishes that the LCDC grievance system was never fully "available" to inmates as such "availability" is contemplated under §1997e(a). A non-mandatory unpredictably utilizable inmate grievance mechanism does not foster the PLRA's goal to encourage internal administrative resolutions to inmates' complaints. Only if institutionally imposed mandatory grievance procedures are in place does the PLRA then require mandatory exhaustion of those remedies before a prisoner may resort to federal court. *See Wyatt v. Leonard*, 193 F.3d 876, 879 (6th Cir. 1999). Since the "availability"

of the LCDC inmate "complaint" system to this plaintiff is questionable, the plaintiff did not have to file such a "complaint" before he could bring this action.

Moreover, the LCDC "Complaints" mechanism may otherwise have not been "available" to the petitioner. The petitioner claims that the persons against whom the complaint was being registered were the ones who considered the complaint and that often complaints were merely disposed of by the subject of the complaint. The petitioner also claims he never got any responses, other than threats, to his complaints and that his complaint forms were never returned to him. It is unreasonable to assume that the plaintiff would not have been empowered by the LCDC "Complaints" policy to direct a correctional officer to take a complaint to the front office. Consequently, the LCDC complaint mechanism probably was not "available" to the plaintiff. *See Perkins v. Obey*, 2005 WL 433580, *4 (S.D.N.Y.) (if corrections officers fail to deliver grievance forms for prisoners, such conduct renders grievance remedies "unavailable" for purposes of §1997e(a); *see also Aldridge v. Gill*, 47 Fed.Appx. 751, 2002 WL 31119722 (6th Cir. (Ky.) (a court must determine whether jail regulations provided for a grievance system as a practical matter in light of the conditions then existing at a jail). "[A] remedy that prison officials prevent a prisoner from utilizing is not an 'available' remedy under §1997e(a)." *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001)).

The goal of the PLRA is to encourage internal administrative resolutions to inmates' complaints so as to avoid unnecessary litigation in the courts. *See Porter v. Nussle*, 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). Congressional intent in passing §1997(e) was to "relieve the court system of the burden of excessive petitioning on the part of those incarcerated persons but also an intent to first permit those charged with the responsibility for jail and prison facilities to

5

remedy wrongs that occur on their watch and to improve conditions for those incarcerated under their care. *Smith v. Franklin County, et al.*, 227 F.Supp.2d 667, 675 (E.D. Ky. 2002) (citing *See, e.g.*, 141 Cong. Rec. §14408-01, §14413 (daily ed. Sept. 27, 1995) (statement of Sen. Dole); *Freeman v. Francis*, 196 F.3d 641, 644 (6th Cir. 1999)).

There were no PLRA-compliant "available" administrative remedies to prisoners in the LCDC. Under the PLRA, prisoners in county jail facilities do not have to exhaust administrative remedies in order to maintain a lawsuit against county officials where there were no available administrative remedies. *Shook v. Board of County Commissioners of the County of El Paso,* 216 F.R.D. 644 (D.Colo., 2003). As it appears that the LCDC had no PLRA-compliant administrative remedies available to the plaintiff, the plaintiff's complaint does not fail for his failure to specifically plead how he exhausted administrative remedies.

## II. Estoppel

The defendants are estopped from asserting the affirmative defense of the plaintiff's failure to exhaust administrative remedies, because it appears their own actions inhibited the plaintiff's access to administrative remedies, *Perkins v. Obey*, 2005 WL 433580, *4 (S.D.N.Y.), when they:

(1) may have failed to adopt a PLRA-compliant administrative remedy; and

(2) designed their "complaint" system so that inmates were often allegedly dependent upon the very persons against whom they were registering a complaint to transport the complaint to the front office or to personally and independently of a committee resolve the matter.

Prison officials may not exploit the PLRA's exhaustion requirement to create unjustifiable technical defenses because, under such circumstances, the administrative remedies are deemed "unavailable." *Klebanowski v. Sheahan*, 2005 WL 910729, *4 (N.D. Ill., March 10, 2005).

### III. "Special Circumstances"

Pursuant to the Second Circuit's exhaustion of administrative remedies test, where administrative remedies were available and the defendants neither waived the non-exhaustion defense nor are estopped from asserting it, the Court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements.

Because PLRA-compliant administrative remedies were not available to the plaintiff in this case and because the defendants are estopped from asserting it, it is not necessary for this Court to consider whether "special circumstances" have been plausibly alleged that justify the prisoner-plaintiff's failure to exhaust administrative remedies.

### Exhaustion of Administrative Remedies Conclusion

Absent additional information that would necessitate a contrary result, at this juncture it appears that the further progression of this action is not impeded by the plaintiff's failure to have exhausted administrative remedies.

### DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS

The plaintiff complains that deliberate indifference has been exhibited to his serious medical needs, in violation of the Eighth Amendment, because he and eighteen other men have been housed in the same "small" cell with a "full-blown Aids" patient who exhibits open sores, who suffers from mental illness, and who, presumably, is violent because he is confined on a domestic relations violence charge. The plaintiff's apparent concern is that he, the plaintiff, is being unnecessarily exposed to the threat of the infectious disease, AIDS, being transmitted to him.

An unreasonable risk to future health is actionable under the Eighth Amendment. *Glick v. Henderson*, 855 F.2d 536, 539-40 (8th Cir. 1988) (prisoner states a colorable §1983 claim if, under medical guidelines, a pervasive risk of harm of contracting the AIDS virus exists and prison officials have failed to reasonably respond to that risk). The act of an HIV-infected person spitting on another person has been deemed sufficiently threatening to another's future health to support a conviction for attempted murder. *Weeks v. Scott*, 55 F.3d 1059 (5th Cir. (Tex.) June 23, 1995). On the other hand, non-HIV-infected inmates cannot demand that HIV-infected inmates (as opposed to full-blown AIDS inmates) be prohibited from sharing a cell with non-HIV-infected inmates. *St. Hilaire v. Arizona Dep't of Corrections*, 934 F.2d 324 (9th Cir. (Ariz.) 1991) (but recognizing that "deliberately forcing an inmate to share his cell with a sexually aggressive, violent, or very ill AIDS carrier might constitute a 'deliberate indifference' claim.").

Summons should be issued on this claim.

## CRUEL AND UNUSUAL PUNISHMENT

The plaintiff also complains that his protection against cruel and unusual punishment has been violated because of his conditions of confinement in that allegedly:

- his cell is overcrowded because 19 people are assigned to a cell with only 9 beds;

- food is served after it has cooled or become cold;

- milk is served only every three to four weeks;

- the breakfast menu never varies;

- tea is served for lunch and dinner every day and often without sweetener;

- two other prisoners have been denied needed medical operations;

- prisoners seeking medical care are housed in a bedless cell;

8

- recreation is limited, and there are no amusements like cards or games or library books; and

- various prisoner security classes are intermingled.

The plaintiff has not set forth whether he is a pre-trial detainee or a convicted prisoner. Consequently, it is unclear whether this conditions-of-confinement claim should be evaluated on Fourteenth Amendment due process grounds or on Eighth Amendment cruel and unusual punishment grounds. *See Hubbard v. Taylor*, 399 F.3d 150 (3rd Cir. 2005). However, the Eighth Amendment establishes a "floor" for testing the conditions of confinement of pre-trial detainees. *Id.* at 165.

All of the plaintiff's cruel and unusual punishment claims (but for the medical care housing claim and the cell overcrowding claim), collectively, do not rise to the level of an Eighth Amendment violation. *Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). Thus, they are subject to dismissal.

The plaintiff's claim that prisoners seeking medical care are housed in either the drunk tank or another cell, both of which have no bed, cannot go forward. The plaintiff has not alleged that he, personally, has been in need of medical care and has been subjected to such bedless confinement as a consequence of seeking medical care. Thus, the plaintiff, individually, is without standing to assert this claim and it must be dismissed.

Summons should be issued on the overcrowding claim wherein the plaintiff asserts that 19 men are regularly housed in his cell, which is designed to accommodate only 9 men.

ACCESS TO COURTS

The plaintiff generally alleges his due process rights have been violated because his lack of an ink pen, typewriter, notary public, certified and/or registered mail service, and updated law library

9

have impinged upon his access to the courts. The plaintiff cannot claim denial of access to the courts where he has not pled or sustained an actual injury or prejudice. *Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996); *Colvin v. Schaublin*, 113 Fed.Appx. 655, 2004 WL 2320322 (6th Cir. (Ohio)); *United States v. Pugh*, 69 Fed.Appx. 628, 2003 WL 21640504 (4th Cir. (W. Va.)); *Smith v. LeBlanc*, 2003 WL 23101806 (D. Minn.) (Not Reported in F.Supp.2d). As this plaintiff has not pled or sustained an actual injury or prejudice, his access to courts claim is subject to dismissal.

## PERSONAL INVOLVEMENT

The solely named defendant is Jailer Jack Sizemore. The plaintiff has not set forth any information about what, if anything, Jailer Sizemore specifically did or did not do to cause the complained-of harm.

## CAPACITY

The plaintiff does not specify whether the named defendant is named in either his individual or official capacity.

The plaintiff has insufficiently pled the capacity in which he is suing the named defendant. *Hurst v. Fentress County Tenn., et al.*, 229 F.3d 1152, 2000 WL 1206520 (6th Cir. (Tenn.)) (Unpublished Opinion). Generally, a plaintiff must designate in which capacity an individual defendant is being sued; and if the complaint does not so state, then by operation of law the individual is deemed to have been sued in his or her official capacity. *See Hardin v. Straub*, 954 F.2d 1193, 1199 (6th Cir. 1992). Only when the allegations in a complaint clearly indicate that an individual defendant is being sued in his or her individual capacity for damages is it construed that a defendant is being sued in his or her individual capacity. *See Pelfrey v. Chambers*, 43 F.3d 1034

(6th Cir. 1995). Presumably, the plaintiff is suing Jailer Sizemore in his official capacity. An official capacity claim filed against a public employee is the equivalent to a lawsuit directed against the public entity which that agent represents. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *Mumford v. Basinski,* 105 F.3d 264, 267 (6th Cir. 1997). Because there are no allegations indicating that Jailer Sizemore was acting in contravention of any governmental policy or was acting outside of his role as a governmental official or as a private tortfeasor, it is construed the plaintiff is bringing this action against Jailer Sizemore in only his official capacity. This action is dismissed against Jailer Sizemore in his individual capacity.

To the extent the plaintiff is bringing this action against Jailer Sizemore in his official capacity for damages, under *Kentucky v. Graham* this action is deemed to be against the governmental entity, the Laurel County Government, as it is represented by the Laurel County Judge-Executive and the members of the Laurel County Fiscal Court. "Municipal entities cannot be held responsible for constitutional deprivations unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Hurst v. Fentrees Co. Tenn.*, 229 F.3d 1152 at *2 (citing *Deaton v. Montgomery County, Ohio,* 989 F.2d 885, 887 (6th Cir. 1993)). "The plaintiff must identify the policy, connect the policy to the governmental entity, and show that the particular injury was incurred because of the execution of that policy." *Id.* (citing *See Garner v. Memphis Police Dep't.*, 8 F.3d 358, 363-64 (6th Cir. 1993)). "A governmental entity may not be sued under §1983 for an injury inflicted solely because it employed a tortfeasor; the doctrine of respondeat superior simply does not apply to §1983 suits." *Id.* (citing *See Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978)). The record and pleadings suggest that Laurel County, in contravention of the policy of at least one other county, has a policy or custom of housing full-

blown AIDs inmates with non-HIV-positive inmates and does so in overcrowded cells with inadequate space and inadequate sleeping facilities.

CONCLUSION

Accordingly, **IT IS HEREBY ORDERED:**

(1) The plaintiff's First Amendment access to courts claim is dismissed without prejudice.

(2) Summons shall issue on the plaintiff's Eighth and/or Fourteenth Amendment deliberate indifference to serious medical needs claim for the plaintiff allegedly having been housed with a full-blown, mentally ill, violent AIDS patient with open sores.

(3) All of the plaintiff's Eighth and/or Fourteenth Amendment cruel and unusual punishment claims, but for the claim involving overcrowding, are dismissed without prejudice.

(4) Summons shall issue on the plaintiff's Eighth and/or Fourteenth Amendment cruel and unusual punishment claim regarding cell overcrowding.

(5) This action is dismissed insofar as it was ever intended to be brought against Jailer Sizemore in his individual capacity.

(6) Summons, accompanied by a copy of this Memorandum Opinion and Order, shall issue to Jailer Sizemore, in only his official capacity, and to the Laurel County Judge Executive and the members/magistrates of the Laurel County Fiscal Court, in only their official capacities, to respond to only those claims which have not been dismissed in this Memorandum Opinion and Order.

This the 22nd day of June, 2005.



**Signed By:**
*Karen K. Caldwell*
**United States District Judge**